FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ FEB 06 2007 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KEITH REID,                              :
                        Plaintiff,       :     **MEMORANDUM DECISION**
                                         :     **AND ORDER**
        - against -                      :
                                         :     CV-05-4435 (BMC)
SUPERINTENDENT BRIAN FISCHER,            :
                                         :
                        Defendant.       :
                                         :
                                         :
------------------------------------------------------------X

**COGAN, District Judge.**

Petitioner was convicted of first degree assault and fourth degree criminal possession of a weapon, N.Y. Penal L. §§120.10(1) and 265.01(2). The conviction stemmed from an altercation outside a convenience store in which petitioner pulled a knife and stabbed the victim in the neck and back, puncturing the victim's lung. He now brings this habeas corpus case under 28 U.S.C. § 2254.

The petition raises five issues: (1) the state courts should have suppressed an in-court identification made after a pre-trial single-photograph identification; (2) the sentencing court took into account pending charges that were subsequently dropped, depriving petitioner of due process; (3) petitioner was deprived of his right to a jury trial because the trial court failed to conduct an inquiry into whether jurors were sleeping during summation; (4) petitioner was denied his right to effective assistance of counsel at pre-trial and trial; (5) the evidence against him was legally insufficient.

The petitioner has failed to establish grounds for relief and, accordingly, the petition is DISMISSED.

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

Pub.L. No. 104-132, 110 Stat. 1214, I review petitions for habeas corpus by a prisoner in state

custody in accordance with the deferential standard codified at 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

A state court has adjudicated a claim on the merits when "it disposes of the claim and

reduces its disposition to [a] judgment" that either "fairly appear[s] to rest primarily on federal

law or to be interwoven with federal law" and does not rest on "a clear and express statement of

reliance on a state procedural bar." See Jimenez v. Walker, 458 F.3d 130, 145-6 (2d Cir. 2006).

As discussed in more detail below, for each of petitioner's claims that meets this standard, he

would only be entitled to relief if he can demonstrate that the state court's rejection of his claims

resulted in a decision that was (1) contrary to clearly established Federal law as defined by the

Supreme Court, (2) an unreasonable application of clearly established Federal law, as defined by

the Supreme Court, or (3) based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

"Clearly established" refers to "the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state court decision." Williams v. Taylor, 529

U.S. 36, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is "contrary to"

2

clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005). See also Williams, 529 U.S. at 412. A state court decision is an "unreasonable application" of federal law when the state court applies the correct clearly established legal principle in an "objectively unreasonable manner." Brown, 544 U.S. at 141.

However, an "unreasonable application" is not the same as an incorrect one. Williams, 529 U.S. at 410-11. "Moreover, the range of judgments that can be deemed 'reasonable' may vary with the nature of the rule in question." Serrano v. Fischer, 412 F.3d 292, 297 (2d Cir. 2005). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).

Although § 2254(d) also permits a state prisoner to challenge a state court's adjudication of the facts as unreasonable "in light of the evidence presented," no such challenge is raised here.

## DISCUSSION

### I.    The Photo Identification

#### A.    Background

The day of the attack, the police interviewed the victim, Jermaine Lynshue, in the hospital. Mr. Lynshue recounted the events of the attack. He stated, in relevant part, that he stopped to buy cigarettes at a store, but that when he entered the store and approached petitioner, he was handed a bag of marijuana. Lynshue refused the bag. Petitioner then threw the bag at

3

Lynshue and shoved him against a wall. A quarrel ensued and Lynshue left the store. Just outside of the store, petitioner stabbed Lynshue.

During the interview, Lynshue described his assailant as a black male, possibly Jamaican, about 25 to 30 years old, 5'9" tall, with a stocky build, bumps on his face and fat lips. Lynshue also told the officer that although he did not know his attacker's name, he did know him from the neighborhood, having seen him "fifty times a year" for the "past five years." Five days later, the victim called the police and said that he had found out that the name of the man who attacked him was Keith Reid, also known as Paul.

That same day, the police ran the name provided by the victim through the computer and received a positive hit for petitioner. The Detective in charge then prepared a photo array of six black males in their mid-twenties; petitioner was number five. The photo array was taken to Mr. Lynshue at the hospital the same day. Lynshue immediately recognized petitioner as the man who stabbed him.

Over the next several months, petitioner engaged in a cat-and-mouse game with the police, calling the Detective in charge on the phone and arranging voluntary surrenders that never occurred. In the course of those conversations, petitioner admitted that he knew the victim from the neighborhood and knew that the victim repaired cars in the neighborhood. (Petitioner denies making this statement but the suppression court found otherwise.) Petitioner also informed the Detective that he had filed a complaint against Lynshue for the incident at a different police precinct. The report stated that petitioner had been in a fight with the victim on the night and at the time and place of the stabbing and that he, petitioner, had been injured.

4

Petitioner was ultimately apprehended at his father's house approximately three months after the attack. After arresting him, the Detective showed petitioner's arrest photo to the victim, who confirmed that the right person had been arrested.

## B.    State Court Proceedings

During the state court proceedings, petitioner raised the same pretrial identification issue he raises here as well as others. The trial court held a "Dunaway/Wade/Huntley" hearing to consider the issues and issued a written decision setting out its reasoning. The trial court rejected petitioner's challenge to the photo array, finding no impropriety. It found the post-arrest single photo identification a closer question, given that the victim did not provide details for his statement that he knew petitioner from the neighborhood, but it found that petitioner's statements to the police that he also knew the victim from the neighborhood and knew that the victim repaired cars, as well as his having filed a police report putting himself in a fight with the victim at the time and place of the attack, were additional indicia of reliability:

> [T]here is additional evidence from an unlikely third party source which has relevance on the issue of prior familiarity. This evidence is the exculpatory statements of the defendant himself who told the detective that he sought to file his own complaint in the 113th Precinct against the victim for what happened on 2/11/98. Defendant in his phone conversation verified that he knew the victim from the area, recognized him at the time of the incident, and that this man repaired vehicles in the neighborhood. Based upon such additional information and verification of identity, this court finds the evidence now supports the conclusion that Jermaine Lynshue did know Keith Reid from activity in the neighborhood and so there was little or no risk of police suggestiveness. This being so, the single photo viewing was confirmatory and need not be suppressed.

People v. Reid, 178 Misc.2d 1000, 1004-1005, 682 N.Y.S.2d 556, 562 (N.Y. Sup.1998) (citations omitted). Although the victim testified and identified petitioner at trial, neither the photo array nor the single photo identification were introduced.

5

Petitioner raised the issue of the single-photo identification, but not the photo array, on direct appeal from his conviction. The Appellate Division affirmed the conviction, holding, among other things, that the single-photograph identification was confirmatory. People v. Reid, 300 A.D.2d 511, 750 N.Y.S.2d 894 (2d Dept 2002), leave to app. den., 99 N.Y.2d 618, 757 N.Y.S.2d 830 (2003).

**C.    Analysis**

This is not an issue that rises to a level warranting habeas corpus relief. At the outset, since this claim was adjudicated on the merits in state court, petitioner must show either that the state court proceedings resulted in a decision that was (1) contrary to, or (2) involved an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d). Neither of these criteria is met here.

It is clearly established Supreme Court precedent that a suggestive pre-trial identification that is likely to lead to a mistaken identification may constitute a denial of due process. Davis v. Herbert, 170 Fed. Appx. 763, 765 (2d Cir. 2006) (citing Stovall v. Denno, 388 U.S. 293, 301-02, 87 S.Ct. 1976, 18 L.Ed.2d 1199 (1967); Manson v. Brathwaite, 432 U.S. 98, 99, 117 S.Ct. 2243, 53 L.Ed.2d 140 (1977); U.S. v. Wade, 388 U.S. 218, 241-42, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). It is not enough, however, that the identification is merely suggestive. Manson, 432 U.S. at 99. The Supreme Court has held that "reliability is the linchpin in determining the admissibility of identification testimony." Id. at 114. "Unless under the circumstances of the case, there is a substantial likelihood of irreparable misidentification, it is for the jury to weigh the strength of the identification." Davis, 170 Fed. Appx. at 765 (quoting Manson, 432 U.S. at 116) (internal quotations omitted). Moreover, an in-court identification may still be admissible

despite a prior suggestive identification, as long as there is an independent source for the in-court identification. Wade, 388 U.S. at 241-42; U.S. v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994).

In testing the reliability of an identification, a court should consider the totality of the circumstances (Stoval, 388 U.S. at 302) and may consider factors such as the following:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Dunnigan v. Keane, 137 F.3d 117, 128 (2d Cir. 1998). In addition to these factors, the Supreme Court has also considered any identification that took place prior to the one being challenged. Wade, 388 U.S. at 241. If a threshold level of reliability can be established through evidence that is independent of the suggestive procedure, then the identification testimony need not be excluded. Dunnigan, 137 F.3d at 128.

In light of this standard, the state court's decision was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law.

First, the state court properly identified the rule to be applied when it held a "Wade" hearing to determine the admissibility of the two photo identifications. The trial court considered the suggestive nature of the single-photo identification and determined that although it may have been suggestive, there was sufficient evidence of an independent source for the identification to make it "confirmatory" under New York law. The New York "confirmatory identification" rule "tracks the federal standard that identification procedures violate due process only if they yield 'unreliable' identifications." Espinal v. Duncan, No. 00 Civ. 4844, 2000 WL 1774960, *3 (S.D.N.Y. Dec. 4, 2004). Second, petitioner is unable to identify any "materially indistinguishable" cases that lead to a different result than the state courts reached.

To the extent petitioner is arguing that the state court "unreasonably" applied Supreme Court precedent to his case, all of the facts compel a contrary conclusion. Indeed, by discounting the victim's statement that he knew petitioner from seeing him several times a year for five years because the victim did not provide enough details regarding such encounters, the state court more than gave petitioner the benefit of the doubt. Moreover, the "totality of the circumstances" points strongly to the reliability of the in-court identification even if the single-photo identification is considered suggestive.

The evidence showed that while the victim and petitioner were not personally acquainted, they both agreed that they knew each of other. The victim testified that he observed petitioner prior to the stabbing both when he entered the store and when petitioner pushed him against a wall. Petitioner himself admitted to the Detective that he had filed a report with another precinct indicating that he was present the night of the stabbing and that he had an altercation with the victim. In addition, petitioner does not challenge Lynshue's detailed description of his assailant, given the same day of the incident, except to say he does not have "bumps" on his face.

Perhaps most importantly, although not explicitly relied upon by the trial court, is the fact that the victim immediately picked petitioner out of a photo array shown to him only days after the attack while he was still in the hospital. Petitioner did not contest the photo array on his direct appeal and he does not contest it here. However, once the photo array is accepted, the single photo identification several months later seems, almost by definition, to be "confirmatory." It simply confirmed the earlier photo array identification. The suggestion that in light of the circumstances of the case, the single photo identification created a "substantial likelihood of irreparable misidentification" is, at best, rank speculation, and more accurately, contrary to logic. See Davis, 170 Fed. Appx. at 765 (quoting Manson, 432 U.S. at 116).

8

Other courts have come to the same result under analogous circumstances. In <u>Dunnigan</u> <u>v. Keane</u>, 137 F.3d 117. 129-30 (2d Cir. 1998), petitioner challenged his in-court identification on the ground that a bank investigator had previously shown the witness 30 photographs, all depicting petitioner as the possible perpetrator. Accepting the obviously suggestive nature of the pre-trial photo identification and the trial court's failure to hold a <u>Wade</u> hearing, the Court held that the in-court identification was supported by sufficient independent evidence to make it reliable. The trial testimony showed that the witness (1) had an opportunity to obverse the petitioner prior to him fleeing; (2) had engaged in hand-to-hand combat with the petitioner; (3) identified him immediately and unequivocally when shown the photographs; and (4) made his pre-trial identification only three days after the incident.

Similarly, in <u>Espinal</u>, the witnesses' in-court identification was found sufficiently reliable despite a single-photo pretrial identification because the witness knew the petitioner from the neighborhood, having seen him 20 times in the preceding year, knew his "street name," and the car he drove. 2000 WL 1774960, *2.

Petitioner's main argument is that the state court's reliance on his own acquaintance with the victim is misplaced. He contends that just because he knew the victim does not prove that the victim knew him. This is insufficient to raise a constitutional issue.[1] It may be true that one fact does not make the other certain, but petitioner's acquaintance with the victim is certainly one fact among many that logically supports the conclusion that the victim knew petitioner. In any event, the state court's balancing of that fact together with the other facts showing that the single photo identification was confirmatory is not constitutional error.

---

[1] Petitioner also raises the issue that only the Detective testified at the <u>Wade</u> hearing as to what both petitioner and Mr. Lynshue told her. Because hearsay is admissible in a suppression proceeding, <u>U.S. v. Matlock</u>, 415 U.S. 164, 172-75 (1974), this issue does not raise a constitutional violation. <u>See also</u>, Fed. R. Ev. 104(a).

In sum, there was nothing unreasonable about the trial court's application of the law on this issue, and the ruling does not provide a basis for habeas corpus relief.

## II. **Sentencing**

### A. **Background**

At the time of his sentencing, petitioner's pre-sentence report reflected that he had other pending charges against him for marijuana, narcotics, and weapons possession. The prosecutor mentioned some of these charges at sentencing. Petitioner's attorney replied, "I hope the court would not consider any matters which are pending such as the situation in Rochester County or Rochester, New York. That matter is not resolved." The Court did not mention them in sentencing petitioner. Subsequent to the sentencing, these other charges were dismissed.

Petitioner brought a §§440.10 and 440.20 motion to set aside the sentence, contending among other things that the sentencing court had considered "materially untrue" information concerning these other charges. The §440 court rejected this claim and the appellate court denied leave to appeal.

### B. **Analysis**

Initially, petitioner's challenge to his sentence does not raise a federal constitutional issue because his sentence fell within the range allowed by state law. Dorsey v. Irvin, 56 F.3d 425, 427 (2d Cir. 1995) ("no federal constitutional issue arises from considering prior arrests when a state sentence is within the range allowed by state law); Willet v. Berbary, 456 F. Supp. 2d 404, 407 (W.D.N.Y. 2006) ("assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court; Silverman v. Edwards, 99 Civ. 7792, 2002 WL 257820, *11 (E.D.N.Y. 2002), aff'd, 69 Fed. Appx. 489 (claim that sentence was

10

illegal because it was based on materially false facts concerning criminal conduct is not subject to federal habeas review where the sentence falls within the state's statutory limits).

Nonetheless, even when considered on its merits, petitioner's challenge fails. The Supreme Court set out the applicable rule in U.S. v. Tucker, 404 U.S. 443 (1972). Tucker set aside a sentence where the sentencing court expressly relied on two prior convictions later determined to be unconstitutional. The Supreme Court held that since the sentence was expressly founded on "misinformation of constitutional magnitude," the defendant had to be resentenced.

Tucker is readily distinguishable. Here, as more fully discussed below, the sentencing court did not expressly rely on the pending charges against petitioner – indeed, there is no indication that it considered the pending charges at all – and there was no "misinformation" before the Court. The probation report said that petitioner had been charged, and in fact he had been charged. The state court sentence was thus neither contrary to nor an unreasonable application of Tucker.

The inclusion of the charged but untried crimes in the presentencing report was in line with the wide range of information that a judge may consider in sentencing. See, e.g., United States v. Lee, 818 F.2d 1052, 1055 (2d Cir.1987) (including hearsay, evidence of uncharged crimes, dropped counts of an indictment, and crimes charged that resulted in acquittal); United States v. Lee, 818 F.2d 1052, 1055 (2d Cir. 1987) (a sentencing judge may consider "hearsay statements, other crimes for which the defendant was neither tried nor convicted, and crimes charged that resulted in acquittal"). It follows that there can be no impropriety in considering pending charges that might result in acquittal.

11

A defendant does have a due process interest in the procedures used during sentencing. Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); U.S. v. Romano, 825 F.2d 725, 728 (2d Cir. 1987). Whether due process is satisfied turns on two issues: (1) was the information presented materially false; and (2) did defendant have an effective chance to respond. United States v. Alexander, 860 F.2d 508, 511-512 (2d Cir. 1988); Romano, 825 F .2d at 728; Montes v. Scully, No. 00 Civ. 1078, 1993 WL 372266, *9 (E.D.N.Y. Sept. 1, 1993). Thus, there is no due process violation if a defendant receives an adequate opportunity to respond to the prosecutor's allegations as to matters in dispute. See Alexander, 860 F.2d at 511-512; Romano, 828 F.2d at 728; Phan v. Mccoy, No. 94 Civ. 1596, 1997 WL 570690, *2 -3 (N.D.N.Y. Aug. 28, 1997).

Here, there was no untrue information at all given to the sentencing court. Petitioner's argument boils down to a claim that the sentencing court treated those charges as if they were convictions instead of pending charges, but there is no reason to presume that the sentencing court did that, if it considered them at all. (Petitioner notes that the sentencing court did refer to the report in general, but there is no indication it relied upon these other pending charges for any purpose.) Obviously, a state court judge knows that a charge is not the same as a conviction and that a defendant's future may hold either a dismissal or conviction on pending charges. In addition, petitioner not only had an opportunity to respond to the pending charges, his attorney actually did respond, pointing out to the court that these were charges, not convictions. Petitioner therefore had all the process to which he was due.

## III.    The Sleeping Juror Issue

### A.    Background

Petitioner claims that three jurors were sleeping during the prosecutor's summation. Respondent disputes this, saying it was at most one juror. The record confirms what happened. The trial judge noticed one juror with his eyes closed during the prosecutor's summation who may or may not have been sleeping; as the court stated: "It could be that he was thinking with his eyes closed. It could be that we need a little more air in here." The court excused the jury, told the lawyers about her concern, and proposed a course of action upon which she executed when the jury returned. The judge advised the jury, without singling out the suspect juror, of how important it was that they stay awake, and in a very tactful way told the jury that the court officer would cause any sleeping juror some embarrassment by waking up any juror who had his or her eyes closed, regardless of whether they were thinking or sleeping.

### B.    Analysis

Petitioner raised this claim in his §440 motion, but the state courts rejected it, holding that the claim was "procedurally barred since [it was] based upon matters in the record which could have been raised on appeal." Such procedural bar qualifies as an "adequate and independent state ground," for purposes of habeas review. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). "That procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." Id.

Petitioner argues that his procedural default should be excused because it was the result of ineffective assistance of appellate counsel. Because petitioner has failed to raise a claim as to ineffective assistance of appellate counsel either in state court or this petition (he only raises ineffective assistance of pretrial and trial counsel), it may not be considered here. Petitioner also

13

states that he would be prejudiced by denial of habeas review because he is actually innocent. That is more properly considered as part of his insufficiency of the evidence point discussed and rejected below.

Therefore, because the state court found the claim to be procedurally barred and petitioner has failed to show cause and prejudice, this Court can grant habeas review only if the failure to do so would result in a fundamental miscarriage of justice. <u>Sawyer v. Whitley</u>, 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). A fundamental miscarriage of justice exists in an "extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Id</u>. No such showing has been made here.

Even if I were to consider this claim on the merits, standing alone, the mere fact that the trial judge, although specifically addressing the possibility of a sleeping juror, did not do so with the level of inquiry that petitioner now says he would have liked would not rise to the level of a due process violation. "[A] court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror." <u>U.S. v. Freitag</u>, 230 F.3d 1019, 1023 (7th Cir. 2000) (citations omitted); <u>see also U.S. v. Diaz</u>, 176 F.3d 52, 78 (2d Cir. 1999). To constitute a due process deprivation, the trial court would have had to deliberately or negligently ignore or take no action with respect to a juror it knew to be asleep, as opposed to potentially asleep. Instead, the trial court identified a potential problem itself and took thoughtful action to nip it in the bud.

The actions of the trial court here were well within its discretion. The claim is both procedurally barred and legally insufficient.

## IV. **Ineffective Assistance of Counsel**

### A. **Background**

Petitioner claims that both his pretrial counsel, Mr. Miller, and his trial counsel, Mr. Mays, were ineffective. In support of his claim, petitioner points to four errors committed by counsel:

1. Mr. Miller failed to advise petitioner of the Queens District Attorney's Office's policy of not offering plea deals to defendants who testify before the Grand Jury;

2. Mr. Mays did not "deliver" on a promise made in his opening;

3. Mr. Mays agreed to admit medical records into evidence that contained conflicting statements by defendant; and

4. Mr. Mays failed to call a medical expert to address statements alleged to have been made by a surgeon (who did not testify) to an investigator.

Respondent argues that the claim against Mr. Miller and the claim that Mr. Mays should have called a medical expert are procedurally barred based on the determination of the § 440 court. The § 440 court held that petitioner's claim against Mr. Miller was "procedurally barred" because it "could have been made to appear on the record for review of such issue on appeal." However, the § 440 court also disposed of the claim on the merits, stating that "[i]n any event, [petitioner] cannot now complain about any action or inaction by counsel concerning a non-existent plea offer."

The court went on to address the claim against Mr. Mays. It held that the claim was "procedurally barred since an allegation of fact essential to support the motion is contradicted by the hospital record, is made solely by the [petitioner], and is unsupported by any other evidence."

There is some question as to whether either of these holdings by the § 440 court amounts to a procedural bar for purposes of habeas review. Generally, an "either/or" decision by a state court noting a procedural default as well as an absence of merit is deemed to rest on the merits

15

for purposes of habeas review. <u>Jimenez</u>, 458 F.3d at 146. However, the § 440 court here drafted its opinion using "and" and not the usual "either/or" language. Similarly, with regard to the "procedural bar" to petitioner's claim against Mr. Mays for failing to put forth a medical expert, as respondent correctly notes, the District Courts are split as to whether it poses a bar for habeas purposes.

Nonetheless, whether procedurally barred or considered on the merits, none of petitioner's claims suffice for habeas relief.

To succeed on his claim under <u>Strickland v. Washington</u> 466 U.S. 668, 689-90 (1984), petitioner would have to show that his lawyer's conduct "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." There is a strong presumption that the assistance of counsel was adequate. <u>Id.</u> at 686.

Under this standard, none of petitioner's claims of ineffective assistance have merit. All of his points concerning ineffectiveness must be measured against three facts: first, his trial counsel obtained an acquittal on the most serious charge he faced – attempted second-degree murder – and another serious charge – intimidating a witness. Second, Petitioner received a sentence that was ten years shorter than the maximum. Third, the record shows that his counsel was active, aggressive, and effective in the conduct of the trial defense. The record thoroughly supports the trial judge's statement after the trial to Petitioner: "I don't think you could have had better representation. I think Mr. Mays took everything he had and used it to the fullest." Petitioner is thus starting with the narrow criteria imposed by <u>Strickland</u>, but the facts of record and the result that was obtained do not advance him on the road to meeting that standard.

**B.    Lack of Advice Concerning Effect of Grand Jury Testimony**

Petitioner's first point of ineffective assistance is based on the proposition that his counsel failed to tell him that the Queens District Attorney had a policy of not offering plea agreements to defendants who exercised their right to testify before the grand jury – which right petitioner did exercise. Petitioner claims that had he known of this policy, he would not have testified. He does not say how he knows that the State would have offered a deal, what the deal would have been, how he can now know that he would have taken it, or that it would be better than the sentence, based on his acquittal on two serious charges, than he in fact received.

The claim is without merit. Petitioner repeatedly disregarded his counsel's advice. His counsel advised him not to testify before the grand jury as it was against his interests; had he taken that advice, then the hypothetical plea bargain he posits might have been available. His counsel also advised him to execute a 45-day waiver agreement, which would have enabled plea bargaining, but petitioner rejected that advice as well. The record thus confirms that when petitioner's appellate counsel contacted his pre-trial counsel, Mr. Miller, regarding the possibility of a plea, he responded that he did not remember a plea offer, but only that petitioner was "adamant about going to trial."

In advising petitioner not to testify before the grand jury, there is no rule of law that would require counsel to identify every conceivable factor that might support that advice, particularly in light of a defendant's insistence on proceeding to testify.  More importantly, speculation as to whether a plea agreement would have been offered; whether, if offered, it would have contained better terms than petitioner received in his sentence; and whether petitioner would have taken it, is not a basis for finding ineffective assistance.  Petitioner himself refuses to commit to such speculation, stating only that had he known of the policy he would

17

have "foregone his right to testify in the grand-jury, and instead left his options open for plea bargaining." Because petitioner's contention involves a plea agreement that was hypothetical in at least three levels, he cannot demonstrate prejudice, as <u>Strickland</u> requires.

### C.    Failure to Deliver on Opening Statement

Petitioner criticizes his former counsel for advancing a theory of defense in the opening statement that petitioner was breaking up a fight between the victim and a third person, and not following through on that theory by offering proof during trial. That was actually half of his theory; the other half was that the victim was lying in identifying petitioner. Petitioner recognizes that his criminal history prevented him from testifying, but offers no other theory of defense that would have been more viable. His counsel's cross-examination of the incident's witness, Martinez, in which he elicited the chaotic nature of the event and that a number of individuals were there, supported his opening statement. Counsel also supported his theory by eliciting from Martinez on cross that she was able to recognize the victim, despite poor lighting, but she could not identify petitioner as the assailant.

Counsel also impeached the victim by bringing out that he was on probation for a sex crime, and that he regularly bought marijuana at that store, including as recently as the night before. He also elicited that the victim could not describe what his assailant was wearing, and got him to admit that although he knew petitioner, he did not tell his friends who stabbed him while en route to the hospital.

There was substantial additional evidence on cross that counsel elicited that supported his opening statement that petitioner was breaking up a fight but was not the assailant. The fact that he asked the jury to infer from that that the petitioner's role, if any, was limited to trying to break up the fight likewise supports the theory presented in opening. Where petitioner is not able to

18

propose any other defense theory, he cannot be prejudiced by the theory presented by his counsel.

Viewing counsel's conduct in the totality of the circumstances, it does not constitute ineffective assistance.

### D. Medical Records

Petitioner complains that his counsel improperly agreed to the admission of his medical records, since they contained conflicting statements by petitioner as to how his hand had been injured. The medical records were admissible in and of themselves and petitioner's statements therein to the physicians about the injury he sustained constitute admissions. There was no basis for redacting the records. See Fed. R. Ev. 801(d)(2), 803(4) and 803(6). There was thus no error on counsel's part, let alone error rising to the level of ineffective assistance.

### E. Medical Expert

Petitioner claims that his counsel should have called a medical expert. This is based upon the fact that post-conviction, petitioner had an investigator contact the doctor who had signed the medical record repairing the victim's lung, and that doctor reportedly told the investigator that he had "nothing to do with" the victim. Setting aside for the moment that petitioner claims it was error for his counsel not to call a particular witness at trial based upon information discovered after the trial had concluded, the doctor contacted by the investigator was not even the doctor who testified at trial. Moreover, the doctor did not sign a statement for the investigator. Nonetheless, even assuming petitioner's investigator's rendition is correct, the doctor may have been merely deflecting petitioner's investigator, as he was prohibited by law from disclosing the victim's condition to the investigator.

19

In any event, it is unclear what petitioner thinks a rebuttal expert witness would have said about this. All the prosecution's expert said was that based on the records, the knife went about four to six inches into the victim's chest cavity. He did not comment on whether the knife entered the lung; the medical records said that. Petitioner apparently thinks an expert could have testified that the stab wound to the back did not cause the victim's lung injury, contrary to the medical records, and based on the surgeon's statement to his investigator. There is so much speculation in arguing that this chain of potential evidence, even if presented, might have affected the jury's verdict, that it cannot possibly satisfy the prejudice standard of <u>Strickland</u>.

**V.      Insufficient Evidence**

Petitioner raised his claim that the evidence of first-degree assault was legally insufficient in his § 440.10 motion. The § 440 court explicitly held the claim to be procedurally barred under New York law because it should have been raised on direct appeal. Therefore, this claim is procedurally barred for purposes of habeas review. <u>See Aparicio</u>, 269 F.3d at 91. "That procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." <u>Id</u>. Plaintiff cannot satisfy either of these requirements. Nor can plaintiff show that failure to provide this claim habeas review would result in a fundamental miscarriage of justice (<u>Sawyer</u>, 505 U.S. at 338.), as it is meritless.

There was evidence to support every element of the crime charged. The victim testified and identified petitioner as the assailant. A witness testified and identified petitioner as involved in the fight. A medical expert testified as to the extent of the injuries. The contradictory evidence that petitioner refers to shows exactly why this was a jury question.

## VI.   Motion to Stay and Amend

Finally, by letter dated May 3, 2006, petitioner requested a stay of proceedings in this case so that he could exhaust a claim for ineffective assistance of appellate counsel and amend his petition to include such claim. Then, some seven months later, by letter dated December 6, 2006, petitioner moved to withdraw his motion for a stay in order to "[l]et justice take its course." The Court could only assume that in the intervening seven months, petitioner was not able to exhaust his ineffective assistance of appellate counsel claim. Therefore, I granted the motion to withdraw by Order dated December 18, 2006.

The result would have been no different had petitioner continued to seek a stay. This Court's discretion to stay this action is limited by <u>Rhines v. Weber</u>, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535 (2005), where the Supreme Court held that "stay and abeyance should be available only in limited circumstances." To come within those circumstances, petitioner would have had to show good cause for not having presented his ineffective assistance of appellate counsel claim in his §440 motion, and that the claim has at least some merit. He has not met either of those standards.

## CONCLUSION

For the reasons set forth above, the petition is DISMISSED. A certificate of appealability shall not issue as petitioner has not made a substantial showing of the denial of a constitutional

right. See 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

Dated: Brooklyn, New York
      February 6, 2007

U.S.D.J.